# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| NATHAN LINDEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BANCORP, INC., DAMIAN M. KOZLOWSKI, and PAUL FRENKIEL,<br><br>Defendants. | Case No. 1:25-cv-00326-JLH |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF NATHAN LINDEN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

**PRELIMINARY STATEMENT**

Plaintiff Nathan Linden ("Linden") respectfully moves this Court for appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and for approval of his selection of counsel on behalf of a putative class of purchasers of The Bancorp, Inc. securities (as defined below).

The PSLRA provides that the Court shall appoint the "most adequate plaintiff" as lead plaintiff, and provides a presumption that the person with the largest financial interest in the relief sought by the class who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is the "most adequate plaintiff."

Linden believes that he is the "most adequate plaintiff" as defined by the PSLRA and should be appointed as lead plaintiff based on his financial losses suffered as a result of Defendants' wrongful conduct as alleged in this action. In addition, for purposes of this motion, Linden satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as his claims are typical of other class members' claims, and he is committed to fairly and adequately representing the interests of the class. Thus, pursuant to the PSLRA's lead plaintiff provision, Linden respectfully submits that he is presumptively the most adequate plaintiff and should be appointed as lead plaintiff for the class.

Additionally, Linden's selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel and Bielli & Klauder, LLC ("B&K") as Liaison Counsel for the class should be approved because GPM has substantial expertise in securities class action litigation and the experience and resources to efficiently prosecute this action.

I.     **FACTUAL BACKGROUND**

This is a class action on behalf of all persons and entities who purchased or otherwise acquired The Bancorp, Inc. ("TBBK" or the "Company") securities between January 25, 2024 and March 4, 2025, inclusive (the "Class Period")

TBBK is a financial holding company that generates majority of its revenue and income through its primary wholly owned subsidiary, The Bancorp Bank, National Association (the "Bank"). Bancorp engages in institutional banking, commercial real estate bridge lending, small business lending and commercial fleet leasing. The Company's commercial real estate bridge loans ("REBLs") are primarily collateralized by apartment buildings. In 2024, the Company also began making consumer fintech loans, which consist of short-term extensions of credit including secured credit card loans, fixed term loans, payroll advances and others, made in conjunction with marketers and servicers.

The complaint filed in this action alleges that throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Bancorp had underrepresented the significant risk of default or loss on its REBL loan portfolio; (2) that the Company's current expected credit loss methodology was insufficient to account for the provision and/or allowance of credit losses; (3) that, as a result of the foregoing, the Company was reasonably likely to increase its provision for credit losses; (4) that there were material weakness in its internal control over financial reporting; (5) that its financial statements had not been approved by its independent auditor; (6) that, as a result of the foregoing, the Company's financial statements could not be relied upon; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

On March 21, 2024, at approximately 9:45 a.m. EST, Culper Research issued a report, alleging that the Company had underrepresented significant risks of default and/or loss on certain real estate bridge loans ("REBLs"). The report alleged the Company's loan book is "rife with unsophisticated syndicated borrowers" who were "coaxed by promises of generational wealth through passive income" with "get rich quick" promises. The report alleged that the Company's REBL loan portfolio is filled with apartments which are "quite literally, crumbling," with high vacancies and multiple condemnations. The report stated the Company "blindly reassures investors that its book contains 'no substantial risk of default or loss,'" but, in reality, the Company's "REBL portfolio faces meaningful risks and will result in meaningful losses." The report concluded that the Company's reserve of only "$4.7 million in REBL loan allowances, representing a mere 0.24% of the total REBL book" is "short by an order of magnitude or more."

On this news, the Company's share price fell $3.63, or 10.15%, to close at $32.12 per share on March 21, 2024, on unusually heavy trading volume.

Then, on October 24, 2024, after the market closed, the Company announced its third quarter 2024 financial results in a press release for the period ended September 30, 2024, reporting $51.5 million in net income. The Company attributed the results in part, to "a new CECL [current expected credit losses methodology] factor" to the Company's analysis of REBL loans classified as either special mention or substandard "which increased the provision for credit losses and resulted in an after-tax reduction in net income of $1.5 million." The Company further explained its results also reflected "prior period interest income reversals on real estate bridge loans transferred to nonaccrual or modified" which "resulted in an after-tax reduction in net income of $1.2 million."

On this news, the Company's share price fell $7.95, or 14.47%, to close at $47.01 per share on October 25, 2024, on unusually heavy trading volume.

Finally, on March 4, 2025, after the market closed, Bancorp disclosed that its "financial statements for the fiscal years ended December 31, 2022 through 2024 as shown in the Annual Report should no longer be relied upon." The Company explained that its auditors for those years "did not provide approval to include [the] audit opinion . . . or [the] consent to the incorporation by reference of their audit report in certain registration statements." The Company further revealed it is "working expeditiously to perform and complete additional closing procedures related to accounting for consumer fintech loans in the allowance for credit losses" in order to file an amended annual report. The Company also revealed it "is evaluating the impact of this non-reliance on its conclusions regarding disclosure controls and procedures and internal control over financial reporting." As a result of the foregoing, the Company stated it would be unable to file timely its fiscal year 2024 annual report.

On this news, the Company's share price fell $2.34, or 4.38%, to close at $51.25 per share on March 5, 2025, on unusually heavy trading volume.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Linden and other class members have suffered significant losses and damages.

## II.    ARGUMENT

### A.    Linden Should Be Appointed Lead Plaintiff

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court

decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"—*i.e.*, the plaintiff most capable of adequately representing the interests of the class—is the class member that:

>  (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
>  (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
>  (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

>  (aa) will not fairly and adequately protect the interest of the class; or
>
>  (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Linden satisfies all of the PSLRA criteria and has complied with all of the PSLRA's requirements to be appointed lead plaintiff. Linden has, to the best of his knowledge, the largest financial interest in this litigation and meets the relevant requirements of Rule 23. In addition, Linden is not aware of any unique defenses Defendants could raise against him that would render him inadequate to represent the class. Accordingly, Linden respectfully submits that he should be appointed lead plaintiff.

### 1.  Linden Filed the Complaint and a Timely Motion

On March 17, 2025, pursuant to Section 21D(a)(3)(A)(i) of the Exchange Act, notice was published in connection with this action. *See* Declaration of Ryan M. Ernst ("Ernst Decl."), Ex. A. Therefore, Linden had sixty days (*i.e.*, until May 16, 2025) to file a motion to be appointed as Lead

Plaintiff. As the Plaintiff that filed this case, and a purchaser of TBBK securities during the Class Period, Linden is a member of the proposed class and has timely filed a motion for appointment as lead plaintiff within sixty days of the notice, in compliance with the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

Additionally, as set forth in his PSLRA certifications, Linden attests that he has reviewed the complaint, adopt the allegations therein, and is willing to serve as a representative of the class. *See* Dkt. No. 1-1. Accordingly, Linden satisfies the first PSLRA requirement to be appointed lead plaintiff.

### 2. Linden Has the Largest Financial Interest

The PSLRA requires a court adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). At the time of this filing, Linden believes that he has the largest financial interest among class members who filed timely applications for appointment as lead plaintiff and is presumed to be the "most adequate plaintiff."

Linden purchased TBBK securities during the Class Period at prices alleged to be artificially inflated by Defendants' misstatements and omissions and, as a result, suffered financial harm of approximately $540. *See* Ernst Decl., Ex. B. To the best of his knowledge, Linden is not aware of any other class member that has filed a motion for appointment as lead plaintiff who claims a larger financial interest. As such, Linden believes he has the "largest financial interest in the relief sought by the class," and thus satisfies the second PSLRA requirement to be appointed as lead plaintiff for the class.

### 3. Linden Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, the relevant inquiry is whether the movant has made a *prima facie* showing of typicality and adequacy. *See Wigginton v. Advance Auto Parts, Inc.*, No. 18-cv-212, 2018 WL 5729733, at *4 (D. Del. Nov. 2, 2018).

#### a) Linden's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory. *See In re Merck & Co., Inc. Sec.*, No. 05-cv-1151, 2013 WL 396117, at *5 (D.N.J. Jan. 30, 2013). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id.* at *7; *see also Wigginton*, 2018 WL 5729733, at *4.

Linden's claims are typical of the claims asserted by the proposed class. Like all members of the class, Linden alleges that Defendants' material misstatements and omissions concerning TBBK's business, operations, and financial prospects violated the federal securities laws. Linden,

like all members of the class, purchased TBBK securities in reliance on Defendants' alleged misstatements and omissions and was damaged thereby. Accordingly, Linden's interests and claims are "typical" of the interests and claims of the class.

### b) Linden Are Adequate Representatives

The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy. *See Wigginton*, 2018 WL 5729733, at *4; *see also In re Pharmaprint, Inc. Sec. Litig.*, No. 00-cv-00061, 2002 WL 31056813, at *6 (D.N.J. Apr. 17, 2002).

Linden has demonstrated his adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this action, and his financial losses ensure that he has sufficient incentive to provide vigorous advocacy. *See* Ernst Decl., Exs. B, C. Linden is also not aware of any conflict between his claims and those asserted on behalf of the class. As such, Linden is well-equipped to represent the class and should be appointed as lead plaintiff.

### B. The Court Should Approve Lead Plaintiff's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel." *Wigginton*, 2018 WL 5729733, at *6 (quoting *Cendant*, 264 F.3d at 276). Here, Linden has selected GPM as lead counsel and B&K as liaison counsel. GPM has successfully prosecuted numerous securities class actions on behalf of injured investors. As reflected by the firm's résumé, *see* Ernst Decl., Ex. C, the Court may be assured that in the event this motion is granted, the members of the

class will receive the highest caliber of legal representation. Accordingly, the Court should approve Linden's selection of counsel.

## III.   CONCLUSION

For the foregoing reasons, Linden respectfully requests that the Court grant his Motion and enter an Order: (1) appointing Linden as lead plaintiff; (2) approving Linden's selection of GPM as lead counsel and B&K as liaison counsel for the class; and (3) granting such other relief as the Court may deem just and proper.

DATED: May 16, 2025

**BIELLI & KLAUDER, LLC**

By: /s/ Ryan M. Ernst
Ryan M. Ernst (ID No. 4788)
1204 N. King Street
Wilmington, DE 19801
Telephone: (302) 803-4600
Email: rernst@bk-legal.com

*Liaison Counsel for Plaintiff Nathan Linden and Proposed Liaison Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email:  rprongay@glancylaw.com
            clinehan@glancylaw.com

*Counsel for Plaintiff Nathan Linden and Proposed Lead Counsel for the Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel*

9